UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re Petition of
THE FEDERAL REPUBLIC OF NIGERIA,

               Applicant,                          **OPINION & ORDER**

For an order pursuant to 28 U.S.C. § 1782           1:21-mc-00007 (JGK) (VF)
permitting Applicant to issue subpoenas in aid
of foreign proceedings to:

VR ADVISORY SERVICES, LTD. VR
ADVISORY SERVICES (USA) LLC, VR
GLOBAL ONSHORE FUND, L.P., VR
ARGENTINA RECOVERY ONSHORE
FUND II, L.P., JEFFREY JOHNSON, and
ASHOK RAJU,

               Respondents.
---------------------------------------------------------X

VALERIE FIGUEREDO, United States Magistrate Judge.

      The Federal Republic of Nigeria ("Nigeria") requests permission to conduct discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782. Nigeria seeks leave to serve subpoenas on VR Advisory Services, VR Advisory Services (USA) LLC, VR Global Onshore Fund, L.P., VR Argentina Recovery Onshore Fund II, L.P., Jeffrey Johnson, and Ashok Raju (collectively, "Respondents"). Respondents oppose the application. See ECF No. 20 ("Respondents' Mem. in Opp."). For the reasons that follow, the application is granted.

## BACKGROUND

### A. Factual Background

      Nigeria is seeking discovery in aid of an upcoming fraud trial against Process and Industrial Developments Ltd. ("P&ID") before the English High Court of Justice in London,

1

England (the "English Proceeding"). In that proceeding, Nigeria seeks to set aside a $10 billion arbitral award. See ECF No. 3, Mem. of Law in Support of Application ("Applicant's Mem.") at 1-2. The arbitral award arose from a Gas Supply and Processing Agreement ("GSPA") between P&ID and Nigeria that Nigeria claims was fraudulently procured. Id. at 2, 5. The GSPA obligated P&ID to construct and operate a natural gas processing plant in Nigeria. Id. Nigeria contends that P&ID never had the infrastructure or ability to perform its obligations under the GSPA and instead "manufactured a default" under the agreement. Id.

In 2012, P&ID commenced arbitration proceedings in the United Kingdom against Nigeria and ultimately obtained, in 2017, a final arbitral award of $6.6 billion.[1] Id. at 2-3; see also ECF No. 4, Decl. of Shaistah Akhtar ("Akhtar Decl.") ¶ 6. In 2018, P&ID commenced a proceeding in the United Kingdom to enforce the arbitration award. Applicant's Mem. at 6; Akhtar Decl. ¶ 6. In September 2019, P&ID's enforcement application was granted. Applicant's Mem. at 6; see also Federal Republic of Nigeria v. VR Advisory Services, Ltd., 27 F.4th 136, 143 (2d Cir. 2022). Subsequently, Nigeria discovered "additional evidence demonstrating that the GSPA was procured by fraud," and on December 5, 2019, Nigeria commenced a proceeding in England to set aside the arbitral award. Applicant's Mem. at 6. In September 2020, the English court issued a judgment concluding that Nigeria had established a strong prima facie case that the GSPA had been procured by bribes and was part of "a larger scheme to defraud Nigeria." Id.

Nigerian authorities began investigating P&ID and its procurement of the GSPA and initiated a series of criminal prosecutions against P&ID. Id. at 9; see also Federal Republic of Nigeria, 27 F.4th at 143. On March 25, 2020, Nigeria filed a Section 1782 application in this Court, to obtain discovery from 10 banks in connection with those criminal proceedings. Federal

---

[1] With interest, the award now exceeds $10 billion. See Applicant's Mem. at 3.

2

Republic of Nigeria, 27 F.4th at 144; see also Applicant's Mem. at 10. That application was granted by the Honorable Lorna G. Schofield on May 7, 2020. Federal Republic of Nigeria, 27 F.4th at 144.

Subsequently, on May 12, 2020, Nigeria filed a second application in this Court under Section 1782 (the "Related Proceeding"), seeking discovery from the same Respondents as named in this application, but in connection with criminal investigations and proceedings pending in Nigeria (the "Criminal Proceedings").[2] Id. at 145. Initially, the Honorable Paul A. Engelmayer granted the application but on November 6, 2020, the court vacated its prior order and denied the application. Federal Republic of Nigeria, 27 F.4th at 145-47. Nigeria appealed to the Second Circuit. Id. at 147. On February 24, 2022, the Second Circuit vacated the judgment and remanded to the district court for further consideration of Nigeria's application. Id. at 141-42, 160-61. The Second Circuit held that the district court had abused its discretion in concluding that Nigeria's application for discovery under Section 1782 improperly circumvented Nigeria's mutual legal assistance treaty with the United States. Id. at 152-57, 160. In reaching that determination, the Court expressly noted that the English Proceeding "would independently qualify as a 'proceeding in a foreign or international tribunal' within the meaning of" Section 1782. Id. at 157. On remand, Nigeria and the respondents in the Related Proceeding entered into a stipulation and order concerning the production of discovery. See ECF Nos. 49-50, 20-mc-00209 (PAE).

---

[2] In this second application, Nigeria sought to obtain discovery from all of the same Respondents named here, as well as from two respondents not named in this application: Richard Dietz and VR Capital Group, Ltd. See ECF No. 1, 20-mc-00209 (PAE).

3

B. The Instant Application

On January 8, 2021, Nigeria filed the instant application, seeking discovery against Respondents in connection with the English Proceeding. See ECF No. 1. By order dated January 13, 2021, the application was referred to the Honorable Debra C. Freeman for resolution. See ECF No. 9. On April 30, 2022, the application was reassigned to me, and I have authority to decide the request for discovery under Section 1782 because it is a non-dispositive matter. See, e.g., In re Hulley Enters., Ltd., 358 F. Supp. 3d 331, 341-42 (S.D.N.Y. 2019) (application brought under Section 1782 is "non-dispositive" matter within meaning of Federal Rule of Civil Procedure 72(b)).

A hearing on the application was scheduled for May 31, 2022. See ECF No. 30; Apr. 30, 2022 Minute Entry. On May 23, 2022, the parties jointly requested an adjournment of the hearing, arguing that discovery was underway in the Related Proceeding and indicating that Nigeria would attempt to obtain the discovery it needed for the English Proceeding in that Related Proceeding. See ECF No. 31 at 1-2; ECF No. 33. The conference was adjourned to July 12, 2022, and for the same reason, the parties again requested an adjournment of that conference. See ECF Nos. 34-36. On September 7, 2022, the parties appeared for oral argument on the instant application. See ECF No. 40 (9/7/22 "Tr.").

Here, Nigeria seeks discovery for use in the English Proceeding, where it is attempting to set aside the $10 billion arbitration award. According to Nigeria, VR Advisory owns 25% of P&ID and the remaining 75% is held by Lismore Capital, a company registered in the Cayman Islands; P&ID is a "shell entity whose only asset" is the arbitration award. See Akhtar Decl. ¶¶ 23-24. Nigeria seeks authorization to issue six subpoenas, one to each Respondent. See ECF No. 5, Decl. of Alexander D. Pencu ("Pencu Decl.") Exs. 44-49 (proposed subpoenas). Specifically,

Nigeria wants to obtain discovery concerning: (1) the acquisition of P&ID by VR Advisory and non-party Lismore Capital; (2) the P&ID acquisition as it relates to English champerty law; (3) financial records concerning P&ID, its known affiliate entities, and their owners; (4) P&ID's historic and current business operations relating to the GSPA and the arbitral award; (5) documents concerning the negotiation, execution, and enforcement of the GSPA; (6) documents concerning P&ID's procurement of, and efforts to enforce, the arbitral award; and (7) documents concerning lobbying activities by P&ID, including its owners, lobbyists, or agents, in the United States in furtherance of P&ID's effort to enforce the arbitral award. See Applicant's Mem. at 4; see also Pencu Decl. Exs. 44-50.

## DISCUSSION

Under 28 U.S.C. § 1782,

> [t]he district court in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . [t]he order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).

A district court has jurisdiction to grant an application under Section 1782 if the following statutory requirements are met: "(1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or any interested person." Kiobel by Samkalden v. Cravath, Swaine & Moore, LLP, 895 F.3d 238, 243 (2d Cir. 2018); see also In re Application of Microsoft Corp., 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006) (citing Schmitz v. Bernstein, Liebhard & Lifshiftz, LLP, 376 F.3d 79, 83 (2d Cir. 2004)); Federal Republic of Nigeria, 27 F.4th at 148. Additionally, the statute requires that the discovery not be

5

"in violation of any legally applicable privilege." Mangouras v. Squire Patton Boggs, 980 F.3d 88, 97 (2d Cir. 2020) (quoting 28 U.S.C. § 1782(a)); In re Guo, 965 F.3d 96, 102 n.3 (2d Cir. 2020) ("While our case law has often focused on the[ ] three elements" stated above, "the statute also imposes other requirements, including that the discovery not be 'in violation of any legally applicable privilege.'").

If the statutory requirements are met, a district court, in its discretion, may grant the application. Kiobel, 895 F.3d at 244; Federal Republic of Nigeria, 27 F.4th 148. The Supreme Court has identified four discretionary factors (referred to as the Intel factors) that a court considers when ruling on a Section 1782 request: (1) whether the person from whom the discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the Section 1782 application contains unduly intrusive or burdensome discovery requests. See Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004). Courts must exercise their discretion in light of the "twin aims" of Section 1782: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts." Id. at 252 (citation omitted).

    A.  Nigeria has Satisfied the Statutory Requirements under Section 1782

Nigeria's application satisfies all of the statutory requirements of Section 1782. First, Nigeria represents that Respondents are found in this District. See Pencu Decl. ¶¶ 45-50. And Respondents do not argue otherwise.

Second, Nigeria is an "interested" party under Section 1782. As the Supreme Court explained in Intel, "litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke [Section] 1782.'" 542 U.S. at 256. Nigeria was the respondent in the proceeding commenced by P&ID to enforce the arbitration award and it is the applicant in the proceeding attempting to set aside that arbitration award. See Applicant's Mem. at 20-21. As a party to the foreign proceeding, Nigeria has a significant interest in obtaining judicial assistance. It is thus an interested person within the meaning of the statute. See In re Application of David Esses, 101 F.3d 873, 875 (2d Cir. 1996) (citing to legislative history of Section 1782 which notes that a "party to . . . foreign or international litigation" is an "interested person" under the statute).

Finally, the requested discovery satisfies the "for use" requirement in Section 1782. See 28 U.S.C. § 1782(a); see also In re Accent Delight Int'l Ltd., 869 F.3d 121, 131 (2d Cir. 2017) (noting that "for use" requirement focuses on an applicant's "practical ability" to place the requested discovery before a foreign tribunal). The term "for use" is afforded a "broad interpretation," and the "sought-after evidence need not be admissible or even discoverable under the rules of the foreign jurisdiction." Deposit Ins. Agency v. Leontiev, 17-MC-00414 (GBD) (SN), 2018 WL 3536083, at *3 (S.D.N.Y. July 23, 2018) (internal citations omitted).

As the Second Circuit noted in the appeal stemming from Nigeria's application in the Related Proceeding, "the English Proceeding would independently qualify as a 'proceeding in a foreign or international tribunal.'" Federal Republic of Nigeria, 27 F.4th at 157. Moreover, Nigeria asserts that it will use the discovery in the English Proceeding to demonstrate that the GSPA and arbitral award "were procured through fraudulent means" and to aid Nigeria in its attempt to set aside that award. Akhtar Decl. ¶¶ 23-25. Although Respondents argue that the

7

material sought is only marginally relevant to the English Proceeding, Respondents' Mem. in Opp. at 20-21, Respondents' objection, at bottom, goes to whether the proposed subpoenas are overbroad and not whether the statutory "for use" requirement is satisfied. See In re Kingstown Partners Master Ltd., 21-MC-691 (LTS), 2022 WL 1081333, *5 (S.D.N.Y. Apr. 8, 2022).

In short, because Respondents are located in the Southern District of New York, the requested discovery is "for use" in the English Proceeding, and Nigeria is an interested person, the statutory requirements of Section 1782 are satisfied.

B.  The Section 1782 Discretionary Factors

Once the statutory requirements are met, a district court has discretion to determine whether, and to what extent, to honor a request for assistance under Section 1782. See Intel, 542 U.S. at 264. If the court permits discovery under Section 1782, it "may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country," for taking testimony or producing documents. 28 U.S.C § 1782(a). So long as the district court fashions its order in accordance with the "twin aims" of Section 1782—"providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts," In re Application of Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir. 1992)—it acts within its discretion. See In re Application of Gianoli Aldunate, 3 F.3d at 61-62 (2d Cir. 1993); see also In re Application of Asher B. Edelman, 295 F.3d 171, 181 (2d Cir. 2002) ("Congress planned for district courts to exercise broad discretion over the issuance of discovery orders pursuant to § 1782(a)—both over whether to grant a discovery order and, if so, what limits to place on that discovery.").

1. *Participation in the Foreign Proceeding*

The first Intel factor provides that "when the person from whom discovery is sought is a participant . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." Intel, 542 U.S. at 264. Here, Respondents are not parties to the English Proceeding, see Applicant's Mem. at 22, and thus may not be within the jurisdictional reach of the English courts. Respondents do not raise any argument in connection with this first factor. The first factor thus weighs in favor of granting the application.

2. *The Nature of the Foreign Tribunal and Character of the Proceedings Underway*

The second Intel factor provides that a district court ruling on a Section 1782 application may consider "the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Intel, 542 U.S. at 264. "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." Euromepa, S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1102 (2d Cir. 1995). A court should deny discovery on the basis of lack of receptiveness only where it is provided with "authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." Id. at 1100.

Nigeria posits that English courts are receptive to Section 1782 assistance. Applicant's Mem. at 23. In that regard, Nigeria submitted a declaration from Shaistah Akhtar, an attorney qualified to practice before the English Courts, who explained that the English Court is "highly likely to find the evidence produced as part of the Section 1782 Application" admissible and probative of the issues in the English Proceeding. Akhtar Decl. ¶¶ 30-32. Akhtar also notes that

the House of Lords, the highest judicial body in the United Kingdom until 2009, has endorsed the use of Section 1782 discovery. Id. at ¶ 32. Nigeria has thus made a showing that the English Courts would be receptive to evidence obtained through the instant application. By contrast, Respondent has not provided any authoritative proof that the English courts would reject the evidence obtained by Nigeria's 1782 application. Consequently, this factor also weighs in favor of Nigeria.

3.  *Attempt to Circumvent Foreign Proof-Gathering Restrictions and Policies*

The third Intel factor seeks to identify "attempt[s] to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Intel, 542 U.S. at 264-65. Section 1782, however, does not limit a district court's authority to require the production of documents "to materials that could be discovered in the foreign jurisdiction if the materials were located there." In re Hansainvest Hanseatische Inv.-GmbH, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018). "Thus, to demonstrate circumvention, Respondents must illustrate not merely that the requested documents are not obtainable through" procedures in English courts, but that Nigeria "engaged in a bad faith endeavor to misuse Section 1782." Id.

Nigeria argues that there are no proof-gathering restrictions that would prevent this Court from granting the application and further notes that English courts have endorsed the use of Section 1782 as a means to obtain pre-trial discovery in aid of a proceeding in those courts. Applicant's Mem. at 24. For its part, Respondents contend that this application is an attempt by Nigeria to circumvent the prior order denying discovery entered by Judge Engelmayer in the Related Proceeding. Respondents' Mem. in Opp. at 18-19. Of course, since Respondents filed their opposition here, the Second Circuit vacated Judge Engelmayer's order denying Nigeria's application in the Related Proceeding. Federal Republic of Nigeria, 27 F.4th at 160-61.

Moreover, in its decision, the Second Circuit recognized both that the English Proceeding "would independently qualify as a 'proceeding in a foreign or international tribunal' within the meaning of" Section 1782 and that "there would be nothing 'improper about Nigeria's use of discovery gathered" in the Related Proceeding "in the English Proceeding." Id. at 157. This factor therefore also weighs in favor of granting Nigeria's application.

### 4. Unduly Burdensome Request

The final Intel factor directs courts to be mindful of overly intrusive or burdensome discovery requests. Intel, 542 U.S. at 264-65. "[A] district court evaluating a [Section] 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." Mees v. Buiter, 793 F.3d 291, 302 (2d Cir. 2015). As the Second Circuit has explained, if a court has "misgivings . . . about the impact of its participation in the foreign litigation," it is preferable for the court to issue "a closely tailored discovery order rather than . . . simply denying relief outright." Euromepa, 51 F.3d at 302.

Nigeria argues that any burden to Respondents imposed by this discovery should be viewed in light of the fact that Respondents are the "ultimate beneficiaries" of the $10 billion arbitration award that Nigeria seeks to set aside by way of the English Proceeding. Applicant's Mem. at 24-25; see also Tr. at 24. According to Nigeria, P&ID, the entity that received the arbitration award, is a shell entity owned in part and controlled by Respondents. See ECF No. 39 at 1.

Respondents raised no argument concerning burden in their initial opposition to Nigeria's application. See Respondents' Mem. in Opp. at 15-23. Following the Second Circuit's remand in the Related Proceeding, the parties agreed to effectively stay proceedings here while Nigeria

attempted to obtain the discovery it sought in this application in the Related Proceeding pending before Judge Engelmayer. See ECF No. 37 at 2; ECF No. 39 at 3; Tr. at 19. Now, Respondents argue that Nigeria should not be permitted to proceed simultaneously on two Section 1782 applications that seek "substantially the same discovery from the same parties." See ECF No. 37 at 2-3. According to Respondents, the doctrine of res judicata bars granting the application, because discovery is proceeding in the Related Proceeding before Judge Engelmayer. See Tr. at 7-9. Respondents' argument fails for several reasons.

First, Respondents cite to no case where a Section 1782 application was denied because the applicant sought discovery for a different foreign proceeding in a separate Section 1782 application. See Tr. at 28, 33-34. Nor is there a prohibition against successive Section 1782 applications in the statute, when the discovery is sought in connection with different foreign proceedings, and Respondents point to no prohibition in the case law. Thus, although Respondents argue that Nigeria has improperly split its applications, Tr. at 7-9, Respondents point to nothing that prohibits separate Section 1782 applications, in an attempt to obtain discovery for use in separate foreign proceedings. For the same reason, there is no merit to Respondents' argument that res judicata bars granting Nigeria's application. See Tr. at 7; Respondents' Mem. in Opp. at 15-18. Respondents point to no case where the doctrine of res judicata was applied to deny different Section 1782 applications that sought discovery in connection with different foreign proceedings.

Second, Respondents' contention that the discovery sought by this application is duplicative of the application in the Related Proceeding is not a basis for outright denial of Nigeria's application. Instead, the appropriate remedy is to limit the scope of the requested discovery. See Mees, 793 F.3d at 302 ("[T]o the extent a district court finds that a discovery

request is overbroad, before denying the application it should ordinarily consider whether that defect could be cured through a limited grant of discovery."). Moreover, even Respondents acknowledge that the discovery requests in the two applications are not identical. See ECF No. 37 at 3; see also Tr. at 10-11. And Nigeria has submitted a blackline which shows that there are multiple discovery requests made in this application that are distinct from requests made in the Related Proceeding. See ECF No. 39 at 3.

In any event, Nigeria contends that Respondents in the Related Proceeding have refused to perform any search for documents responsive to Nigeria's discovery requests in this proceeding. See ECF No. 39 at 3; Tr. at 22-26, 39-40. Further, Nigeria seeks the discovery here in connection with an English Proceeding that is scheduled to commence in January 2023—a fast-approaching deadline that does not loom over the Related Proceeding before Judge Engelmayer. Tr. at 20, 39.

To ease the burden on Respondents, Nigeria has offered to pay for the deduplication of documents and notes that, to the extent some of the discovery requests between the two applications overlap, it is not asking Respondents to "duplicate their document production and produce two sets of documents in the two cases." Tr. at 19, 22-27, 37-40, 42. In short, given the amount in controversy in the English Proceeding and the fact that Nigeria does not appear to be receiving the discovery it has requested here in the Related Proceeding, it is not unduly burdensome to require that Respondents respond to the subpoenas here. The final Intel factor thus also weighs in favor of granting the application.

In sum, Nigeria has satisfied the statutory factors under Section 1782 and all of the Intel factors weigh in favor of granting Nigeria's application for discovery. If Respondents seek to narrow the scope and number of the requested documents, they may do so through a meet-and-

confer with Nigeria's counsel. In light of the upcoming start of the English Proceeding, the parties are directed to conduct a meet and confer to discuss and reach agreement on any necessary search terms for Respondents to conduct a search and production of non-privileged documents responsive to the subpoenas. Respondents shall begin producing documents responsive to the subpoena requests by October 15, 2022 and shall complete the production by November 30, 2022.

## CONCLUSION

For the reasons set forth above, Nigeria's application pursuant to Section 1782 is granted. Nigeria is hereby authorized to serve the subpoenas annexed as Exhibits 44-49 of the Pencu Declaration. See ECF Nos. 5-45, 5-46, 5-47, 5-48, 5-49, 5-50. The Clerk of Court is directed to terminate the motion at ECF No. 1.

**SO ORDERED.**

DATED:     New York, New York
           September 14, 2022

_____
VALERIE FIGUEREDO
United States Magistrate Judge