

> **MEMO ENDORSED**
>
> [Signature]
> HON. VALERIE FIGUEREDO
> UNITED STATES MAGISTRATE JUDGE
>
> Dated: 11-2-2022
>
> A discovery conference was held on November 1, 2022, to address the discovery disputes raised by the parties at ECF Nos. 53 and 55. As discussed at the conference, the Federal Republic of Nigeria seeks documents from the VR Respondents concerning their valuation of the acquisition of 25% of P&ID. See ECF No. 53 at 2. Nigeria's request for this category of documents is denied except: (1) Nigeria can obtain the types of documents that counsel for Respondents indicated at the conference that Respondents had agreed to produce, i.e., non-privileged documents concerning valuation of the investment that concern the arbitration or GSPA; and (2) Nigeria can obtain documents showing the purchase price at which the VR Respondents obtained their 25% interest in P&ID. The parties also raised a dispute concerning the date range for Respondents' production. See ECF No. 53 at 3. Respondents are directed to search for and produce documents that were sent, received, or created on or before January 9, 2021. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 53. SO ORDERED.

October 18, 2022

**By ECF**

The Honorable Valerie Figueredo
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

**Re:** *The Federal Republic of Nigeria v. VR Advisory Services, Ltd. et al.*, (1:21-MC-0007)

Dear Judge Figueredo:

We write pursuant to Rule II(c)(2) of Your Honor's Individual Practice Rules on behalf of The Federal Republic of Nigeria ("Nigeria"), the applicant in this proceeding commenced pursuant to 28 U.S.C. §1782 ("Section 1782"). On September 14, 2022, the Court granted Nigeria's Section 1782 application, and ordered VR Respondents to produce documents responsive to Nigeria's subpoenas by October 15, 2022, and complete production by November 30, 2022. *See* ECF 42. Nigeria seeks discovery in aid of an upcoming January 13, 2023 fraud trial in England to set aside a fraudulent $10 billion arbitral award (the "Award") that non-party Process and Industrial Developments ("P&ID") seeks to enforce against Nigeria (the "English Proceedings").

The parties have met and conferred several times to discuss the scope of VR Respondents' production, most recently on October 17, 2022, at 10:30AM for approximately one hour. Christopher Major and Austin Kim have participated on behalf of Nigeria, and Jeffrey Chivers and Theodore Rostow have participated on behalf of VR Respondents. Nigeria and VR Respondents agree that the parties have reached an impasse on three issues that require the Court's intervention: (1) scope of disclosure; (2) custodians; and (3) date range. Nigeria has notified VR Respondents of Nigeria's intention to file this letter-motion for a discovery conference.

**Scope of Disclosure:** The parties have reached an impasse on three areas of disclosure: (1) documents related to valuations of P&ID and the Award, including the transaction(s) by which VR Respondents acquired an interest in the Award; (2) documents related to Process Holdings Limited ("PHL"), the vehicle through which VR Respondents hold an interest in P&ID, and PHL's shareholder lawsuit against P&ID's other shareholder, non-party Lismore Capital Ltd. ("Lismore") and P&ID's co-founder Brendan Cahill ("Cahill"); and (3) documents related to lobbying and public relations work conducted for or on behalf of P&ID.

First, financial documents related to P&ID and the Award, including the terms of VR Respondents' acquisition of 25% of P&ID, are relevant to the English Proceedings. The Award has a face value of $6.6 billion that with interest now stands at over $10 billion. Lismore and Cahill along with P&ID's other co-founder, Michael Quinn ("Quinn") (deceased), orchestrated P&ID's fraud against Nigeria, including the arbitration that resulted in the Award. The English courts have already made preliminary findings that P&ID defrauded Nigeria. *See* ECF 4-2 (¶¶196, 210). Based on the face value of the Award, when Lismore and Cahill sold 25% of P&ID to VR Respondents, they earned a substantial profit from P&ID's fraud. Wrongfully obtained profits are relevant to the English Proceedings where Nigeria is seeking to set aside the Award. Similarly, if Lismore and Cahill offered 25% of P&ID to VR Respondents at a significant discount, this is strong evidence that P&ID and its shareholders knew that the underlying agreement, known as the Gas Supply and Processing Agreement (the "GSPA"), and the Award were obtained through fraud.

Second, in or around September 2020, VR Respondents (through PHL) commenced arbitral proceedings against Lismore and Cahill in connection with VR Respondents' investment in P&ID. VR Respondents admit that the shareholder arbitration is "*arguably related to Nigeria's allegations...and the English set-aside proceedings.*" *See* Exhibit A, p.1 (emphasis added). PHL commenced the shareholder lawsuit shortly after the English court's September 4, 2020 judgment in Nigeria's favor, and after Bernard McNaughton, a former P&ID employee, contacted VR Respondents on January 20, 2020, with evidence that P&ID, Cahill and Quinn have a long history of fraudulent transactions in Nigeria. *See* ECF 4-2, *see also* Exhibit B. Arguments made in the shareholder lawsuit and evidence being used against Lismore and Cahill are relevant to the procurement and enforceability of the Award. VR Respondents contend that the shareholder lawsuit is nothing more than an example of a hedge fund "hedging" its investment.

Third, VR Respondents and P&ID have retained lobbyists and public relations firms to engage in a cross-border public media campaign against Nigeria, including lobbying members of the US Congress and English Parliament against Nigeria. VR Respondents' media campaign is in furtherance of P&ID's efforts to deceive the English courts and give the English courts the "false impression that P&ID was able and willing to perform the GSPA," and "impression that P&ID was a legitimate business." *See* ECF 4-2, ¶¶185, 210. These lobbying firms purport to be acting on behalf of "United States-Nigerian relations," but Nigeria is aware of no such efforts and VR Respondents and P&ID are attempting to enforce a fraudulent $10 billion arbitral award against Nigeria. *See* ECF 5-14, p.2. VR Respondents contend that communications with non-lawyer lobbyists and media professionals are privileged, but a "media campaign is not a litigation strategy." *See Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 431 (S.D.N.Y. 2013); *see also In re Chevron Corp.*, 749 F.Supp.2d 141, 163-165 (S.D.N.Y. 2010) (activities of "lay lobbyists, [and] public relations consultants" are not privileged, and the work product doctrine "is not intended…to obscure 'what [i]s essentially a lobbying and political effort,' even one undertaken by a lawyer").

VR Respondents contend that the scope of production in this Section 1782 proceeding cannot extend to VR Respondents' investment in P&ID or post-investment actions taken by VR Respondents related to the Award, including the shareholder litigation and public media campaign.

**Custodians and Depositions**: Nigeria seeks documents from two individual custodians that VR Respondents have refused to include in their collection, Emile du Toit and Richard Deitz. Nigeria also requests an order for VR Respondents to sit for depositions within the existing scheduling order and that VR Respondents promptly designate a corporate representative to be deposed.

Emile du Toit is the Chief Financial Officer for VR Respondents and is a director of non-parties PHL and P&ID. PHL is not a party to the English Proceedings, and its documents are in the possession, custody and control of VR Respondents. As discussed above, PHL has commenced arbitral proceedings against P&ID's shareholder (Lismore) and co-founder (Cahill), and as a director of PHL Mr. du Toit is in possession of documents related to PHL's shareholder lawsuit.

Richard Deitz is the founder of VR Capital Group, Ltd., the parent company of VR Respondents. VR Respondents previously identified an August 2017 communication between Mr. Deitz and Lismore as the earliest communication related to VR Respondents' acquisition of 25% of P&ID. No other person affiliated with VR Respondents is on the August 2017 email. Also, according to VR Respondents' search term hit count reports, Mr. Deitz is in possession of the second largest number of documents responsive to key search terms, including "P&ID" and "GSPA."

VR Respondents assert that Messrs. du Toit and Deitz live outside the United States, and that neither were intimately involved in the P&ID investment. VR Respondents also contend that Mr. Deitz's communications are commercially sensitive. A protective order solves that concern.

**Date Range**: Nigeria requests that VR Respondents be ordered to search for and produce documents sent, received or created on or before January 9, 2021, the day Nigeria commenced this Section 1782 proceeding. VR Respondents refuse to search beyond December 5, 2019, the day Nigeria filed their application to set aside the Award in England. As discussed above, both the whistleblower contacts and P&ID shareholder litigation post-date December 5, 2019. VR Respondents cannot select a premature cut-off date to conceal plainly relevant documents. Privilege concerns can be addressed through the meet and confer process. For example, Nigeria offered to allow VR Respondents to separate post-December 5, 2019 communications solely between VR Respondents and counsel from the review pool. VR Respondents rejected this proposal without explanation. This demonstrates that VR Respondents' actual concern has nothing to do with privilege, but rather, is another attempt to conceal evidence from Nigeria.

Nigeria's requests should be considered in light of the English court's findings that Nigeria established a "strong prima facie case that the GSPA was procured by bribery," that P&ID "gave perjured evidence to the Tribunal," and then "relied on that evidence…in knowledge of its falsities." *See* ECF 4-2 (¶¶196, 210). Any burden imposed by the requested disclosure is minimal compared to the fraudulent $10 billion Award VR Respondents seek to enforce against Nigeria.

Very truly yours,

/s/ *Christopher J. Major*
Christopher J. Major
cc: All counsel of record via ECF