**CHIVERS** LLP

300 Cadman Plaza West, 12th Floor
Brooklyn, New York 11201

December 8, 2022

*Via* ECF

The Honorable Valerie Figueredo
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *The Federal Republic of Nigeria v. VR Advisory Services, Ltd., et al.*,
              Case No. 1:21-mc-007-JGK-VF (S.D.N.Y.)

Dear Judge Figueredo,

Pursuant to Rule II(c) of Your Honor's Individual Practices in Civil Cases and this Court's order dated December 5, 2022, ECF 69, we write on behalf of the VR Respondents in opposition to Nigeria's letter motion, ECF 68. The Court should deny both prongs of the motion.

First, the Court should deny Nigeria's motion for contempt sanctions. The VR Respondents have timely completed their document production, and all six VR Respondents are scheduled for deposition in December. The VR Respondents are not in violation of any Court order. Nigeria's contention otherwise is based on material omissions and a mischaracterization of events. The motion was made to manufacture the appearance of discovery misconduct that has not occurred.

Second, the Court should deny Nigeria's motion to compel. It is a plain effort to circumvent the discovery limitations in the English Proceeding, contrary to Section 1782 case law, and none of the unproduced or redacted records are relevant to Nigeria's claims in the English Proceeding.[1]

***Background*:** In its letter motion, Nigeria egregiously mischaracterizes the procedural history and meet-and-confer discussions relevant to the parties' dispute over the shareholder-arbitration documents. A fair summary of relevant events makes clear that the VR Respondents are not in violation of any Court order and that Nigeria's motion for contempt is vexatious and meritless.

During the November 1, 2022 conference, the Court directed the VR Respondents to submit the non-privileged shareholder documents for an *in camera* relevance review by November 7, 2022. *See* ECF 61-1 ("Tr.") at 45:11-24. In the days thereafter, counsel for the VR Respondents learned that Nigeria had concealed from the VR Respondents and the Court that, in the English Proceeding itself, Nigeria was already litigating for, and would receive a production from, the very same group

---

[1] The VR Respondents have faithfully reproduced all the shareholder-arbitration documents that were produced to Nigeria in the English Proceeding, as they were produced there. None of the 35 documents contains any evidence (or any reference to, or implication of, any evidence) related to allegedly improper payments to Nigeria officials or to any other aspect of Nigeria's fraud claims in the English Proceeding, other than by reference to evidence or statements that were filed in the English Proceeding itself (all of which Nigeria has already received and presumably reviewed).

of documents.[2]  Accordingly, the VR Respondents timely moved to stay and vacate the November 1 Order, *see* ECF 57, and timely filed an Objection to the Order pursuant to Rule 72, *see* ECF 63.

Thereafter, on November 16, 2022, the parties reached a written agreement between counsel concerning, *inter alia*, how the arbitration-documents would be handled in light of Nigeria's duplicative litigation in the English Proceeding.  That agreement unambiguously resolved and mooted the prior motion practice and order as to the shareholder-arbitration documents.  Indeed, Your Honor directed the VR Respondents to notify Judge Koeltl that the "objections raised by VR Respondents (see ECF No. 63) as to my ruling concerning those documents is now moot."  ECF 65.  The VR Respondents adhered to this Order, *see* ECF 66, and Judge Koeltl granted the VR Respondents' consent motion to terminate the Objection as "moot," which unambiguously meant the underlying Order was no longer in effect.  *See* ECF 67.  The VR Respondents never would have forgone their objection in the absence of Nigeria's agreement to allow the VR Respondents to re-produce the documents as they were produced in the English Proceeding.

Under the parties' agreement, the parties agreed that the dispute over the shareholder-arbitration documents would be resolved by (1) the VR Respondents' re-producing the shareholder-arbitration documents as produced by P&ID in the English Proceeding and then (2) the VR Respondents producing any remaining documents subject to redactions for privilege.  On November 22, 2022, the VR Respondents adhered to the parties' agreement by re-producing to Nigeria (in the United States) the same production of shareholder documents that P&ID made to Nigeria in the English Proceeding pursuant to English law.  Contrary to Nigeria's spurious contentions, the VR Respondents did not apply redactions to these documents—rather, as agreed, the VR Respondents re-produced exactly what P&ID produced in England.[3]

On November 29, 2022, in a teleconference between counsel, Nigeria unambiguously stated its intention to renege on its commitment and unilaterally breach the parties' agreement.  During that call, counsel for the VR Respondents implored Nigeria to keep its word and adhere to the agreement, including by reminding Nigeria that, ***if the agreement were respected***, the VR Respondents would produce the remaining shareholder-arbitration documents the next day.[4]  But Nigeria reaffirmed its decision to breach the agreement by pursuing specifically the irrelevant and confidential redacted portions of the P&ID production.  Nigeria argues that the parties' agreement was invalid because the VR Respondents did not inform Nigeria that their re-production of the

---

[2] This revelation contradicted Nigeria's implied representations during the November 1 conference.  At the conference, the VR Respondents repeatedly stressed that Nigeria's ability to obtain the same documents in the English Proceeding weighed strongly against requiring their production here.  *See, e.g.*, Tr. at 8:4-24, 9:4-11, 52:8-19; 53:7-16.  In response, Nigeria asserted there was "no showing" that Nigeria could obtain the documents it sought in the English proceeding.  *See* Tr. 11:2–3; *see also id.* at 54:15-22 (asserting there is no foreign "exhaustion" requirement under Section 1782, which inaccurately implied that Nigeria had not sought the documents in the English Proceeding).

[3] Nigeria asserts that counsel for the VR Respondents "acknowledged that the redactions violated U.S. law and are indefensible."  ECF 68 at 2.  That is untrue.  Counsel stated, accurately, that (a) the VR Respondents did not apply the redactions, but rather re-produced the P&ID-redacted documents per the parties' agreement, and (b) although the Federal Rules, standing alone, would not ordinarily entitle the VR Respondents to make relevance redactions, the documents were produced pursuant to the parties' mutually agreed upon terms in the November 16 agreement.

[4] Nigeria inaccurately states that counsel represented unconditionally that the VR Respondents would produce the remaining documents and that the VR Respondents did an "about face" on the production.  ECF 68 at 2.

2

documents produced by P&ID would contain whatever redactions P&ID applied. *See* ECF 68 at 1. But that argument rings hollow: Nigeria clearly knew that P&ID would apply redactions to information that is confidential and irrelevant pursuant to English law, *see* CPR PD57AD paragraph 16.1.[5] Nigeria's breach relieved the VR Respondents of their obligation to produce the remaining shareholder-arbitration documents, as the VR Respondents wrote to Nigeria on November 30. Nigeria cannot breach the parties' agreement and then demand its further benefits.

***Contempt Motion*:** The Court should not certify a contempt finding under 28 U.S.C. § 636(e)(6). The prerequisites for a contempt certification are plainly not satisfied here. The November 1 Order was resolved, superseded, and mooted by subsequent events, including the parties' November 16 agreement and Your Honor's and Judge Koeltl's November 16, 2022 orders. *See supra*. At a minimum, it was certainly not **"clear and unambiguous"** to the VR Respondents that they would be in violation of the November 1 Order by declining to continue adhering to the parties' agreement after Nigeria had decided to break it.[6] Nor did the VR Respondents have any reason to believe that, on November 17, 2022, the VR Respondents were still required to submit documents for *in camera* review. The imposition or certification of contempt in these circumstances is unsupported and would be extremely unfair to the VR Respondents and their counsel who have timely and in good faith performed the onerous discovery demanded by Nigeria in this action.

***Motion to Compel*:** The Court should deny Nigeria's motion to compel. Without notifying the Court, Nigeria has been litigating, and *continues* to litigate, the relevance and discoverability of the same documents in the English Proceeding that Nigeria is litigating here. The Court should deny Nigeria's attempt to circumvent the discovery limitations of the English Proceeding, which provides clear grounds to deny Nigeria's motion to compel.[7] In addition, the unredacted portions of the documents that have been produced to Nigeria (in both actions) are the only portions of the documents that contain information that is arguably relevant to Nigeria's claims in the English Proceeding. Further, the redacted material includes information that, while irrelevant, is highly commercially sensitive, such as, for example, disputes among shareholders related to litigation services vendors. The VR Respondents should not be compelled to produce such confidential and irrelevant material.

---

[5] Indeed, Nigeria clearly knew that redactions could be applied because (i) the agreement stated expressly that the VR Respondents would "*re-produce* to Nigeria (in the United States) *what P&ID produces in England*" (emphases added), (ii) Nigeria is a party to the English Proceeding and knows that such redactions are expressly permitted under English law, (iii) before the agreement was reached, the VR Respondents expressly stated in their Objection that, as Nigeria knows, Nigeria would receive documents from P&ID "subject to English law *and the procedures of the English court*," *see* ECF 63 at 8 (emphasis added), which expressly permit redaction of information that is irrelevant and confidential, CPR PD57AD paragraph 16.1, *available at* https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part-57a-business-and-property-courts/practice-direction-57ad-disclosure-in-the-business-and-property-courts.

[6] *See, e.g.*, *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 131 (2d Cir. 2021) ("[A] contempt order is inappropriate if there is a fair ground of doubt as to the wrongfulness of the [alleged contemnor's] conduct." (quotation omitted)); *see also, e.g.*, *Blue Citi LLC v. 5barz Int'l Inc.*, 2019 U.S. Dist. LEXIS 234092, at *3 (S.D.N.Y. July 29, 2019); *Danaher Corp. v. Travelers Indem. Co.*, 2014 U.S. Dist. LEXIS 39300, at *25-26 (S.D.N.Y. Mar. 21, 2014); *Trs. of Empire State Carpenters v. Duncan & Son Carpentry, Inc.*, 2015 U.S. Dist. LEXIS 83419, at *9 (E.D.N.Y. June 26, 2015).

[7] *See, e.g.*, *Metallgesellschaft v. Hodapp*, 121 F.3d 77, 79 (2d Cir. 1997); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 195 (S.D.N.Y. 2006); *In re Porsche Automobil*, 2021 U.S. Dist. LEXIS 115099, at *20-23 (S.D.N.Y. June 21, 2021).

Respectfully,

s/ Jeffrey W. Chivers
Jeffrey W. Chivers, Esq.
*cc:  All counsel of record via ECF*